IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PROBIOFERM, LLC, | CASE NO.: 4:21-cv-00194 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| FLUID AIR, LLC, and SPRAYING SYSTEMS, INC. | |
| Defendants. | |

COMES NOW Plaintiff, ProbioFerm, LLC, by and through its undersigned counsel, and in support of its Complaint against Fluid Air, LLC and Spraying Systems, Inc. states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, ProbioFerm, LLC ("ProbioFerm"), is a limited liability company organized and operating under the laws of the State of Iowa with its principal place of business at 10215 Dennis Dr., Urbandale, Polk County, Iowa 50322.  For diversity purposes, ProbioFerm is a resident and citizen of the State of Iowa and has two members, one of whom, Scott Goldsmith, is a resident of the State of Iowa, and the other, Yoshiteru Koide, is a resident of the State of California.

2.      Defendant, Fluid Air, LLC ("Fluid") is a limited liability company organized and operating under the laws of the State of Illinois with its principal place of business at 200 W. North Avenue, Glendale Heights, Illinois 60139-3408.  Upon information and belief, for diversity purposes, Fluid is a resident and citizen of the State of Illinois and its sole member,

1

Spraying Systems, Inc., is incorporated and has its principal place of business in the State of Illinois.

3.     Defendant Spraying Systems, Inc. ("Spraying Systems") is a corporation organized and operating under the laws of the state of Illinois with the same principal place of business as Fluid, set forth above.

4.     This Court has personal jurisdiction over Fluid and Spraying Systems as both have the requisite minimum contacts with the State of Iowa necessary to satisfy the due process requirements of the United States Constitution.  Specifically, as set forth in more detail below, beginning in late 2017 / early 2018 and continuing through the present, representatives of Fluid and Spraying Systems solicited and negotiated for the sale by Fluid of a PolarDry Model 0050 electrostatic spray dryer to ProbioFerm that was shipped, delivered, installed, maintained and subject to repeated attempted repair and replacement work in Iowa, all by Fluid and/or Spraying Systems employees and representatives who came to Iowa.  Fluid and/or Spraying Systems also directed countless emails, phone calls, text messages and the like to ProbioFerm in Iowa in relation to the PolarDry Model 0050.

5.     Because of the complete diversity of the Parties and the amount in controversy, which exceeds the jurisdictional threshold of 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this action.

## FACTUAL BACKGROUND

6.     ProbioFerm is a biotechnology company located in Urbandale, Iowa, that specializes in probiotic development and manufacturing.

7.     As part of the probiotic manufacturing process, the subject bacteria are dried.

8.      Historically, ProbioFerm, like much of the industry, used freeze dryers to dry its bacteria.  A downside to spray dryers is that the heat used to dry the bacteria is oftentimes too intense and results in high temperatures that cause degradation of the bacteria.

9.      The Defendants approached ProbioFerm in late 2017 / early 2018 about a new electrostatic spray dryer ("ESSD") (the PolarDry line) developed as an alternative to traditional spray dryers and conventional freeze drying, one purported benefit of which was its low operating temperature and resulting greater encapsulation efficiency and less drying time than traditional freeze drying.

10.     Fluid first allowed ProbioFerm to test out its PolarDry Model 001 (the "Model 001"), a portable ESSD intended for feasibility testing in a laboratory setting.  ProbioFerm provided materials to Fluid to be tested at Fluid's testing facility to compare results against conventional freeze drying of the same material.  ProbioFerm paid Fluid for this testing, received samples back and then tested the material for viability and stability.  After multiple tests on multiple strains of bacteria at the test facility utilizing the Model 001 over several months, it was determined the Model 001 was capable of drying each of the tested strains with equal viability and stability as the freeze-dried samples.

11.     ProbioFerm tested the Model 001 from January to December 2018 and was able to achieve the low drying temperatures it needed in order to manufacture certain heat-sensitive strains of bacteria.  ProbioFerm agreed to bring a Model 001 back to its facility to run additional tests and even agreed to share test results with Fluid to assist Fluid in marketing its Polar Dry units.  In doing so, ProbioFerm incurred infrastructure and operational costs to run the Model 001 at its facility.

12.     From there, Fluid and Spraying Systems encouraged and pushed ProbioFerm to purchase and install the PolarDry Model 050 (the "Model 050"), repeatedly representing verbally and in writing that the Model 001 was entirely scalable to the much larger Model 050, including as to the low drying temperatures.

13.     Importantly, ProbioFerm asked the Defendants if other companies had purchased the Model 050 and further told the Defendants ProbioFerm did not wish to be the Defendants' "guinea pig."  In response, the Defendants assured ProbioFerm Fluid had sold other Model 050s and ProbioFerm would not be the "guinea pig."

14.     Based on these representations, in August of 2018, ProbioFerm purchased a Model 050 from Fluid for $1,423.722.

15.     The Model 050 did not become operational until October of 2019.

16.     In addition to the cost of the Model 050, ProbioFerm built an entirely new facility to house the Model 050 (which is approximately 17 feet tall by 11 feet wide) and incurred significant other costs necessary to house and integrate the Model 050 into its existing manufacturing process.

17.     The Model 050 has never achieved the same low drying temperatures as the Model 001, despite the Defendants' representations to the contrary.

18.     Fluid did not provide, and on information and belief did not have, a Scale Up Guide manual for the Model 50 until ProbioFerm informed the Defendants how the Model 050 operated.

19.     The Defendants' representatives subsequently admitted the Model 050 could not in fact achieve the same low drying temperatures as the Model 001.

20.     Due to the Model 050's inability to reach the same low drying temperatures and the Model 001, Fluid attempted a redesign to try to achieve those same low drying temperatures. This redesign did not succeed.

21.     Fluid's attempted redesign of the Model 050 lasted approximately one month and caused ProbioFerm to be shut down during the redesign and purchase products from other sources.

22.     ProbioFerm has invested significant time, money, and effort in working with Fluid to make adjustments, improvements, repairs, etc. to the Model 050 to try and achieve those low drying temperatures, to no avail.

23.     ProbioFerm has also since learned that, contrary to the Defendants' representations, ProbioFerm was the first company to purchase, install and operate the Model 050 and was, therefore, the "guinea pig" for the scalability and operating parameters of the Model 050.

24.     If the Defendants had not misrepresented to ProbioFerm that the technology behind the Model 050 was already proven and was scalable to the Model 001, ProbioFerm would not have purchased the Model 050 and could have purchased a freeze drier and still worked with Defendants to develop the Model 050 technology.

25.     ProbioFerm relied on the Defendants' representations that the technology was scalable and had been successfully employed by other customers, which were false statements, in deciding to purchase the Model 050.

26.     Due to Defendants' material misrepresentations and the Model 050's inability to operate as represented, ProbioFerm has incurred substantial monetary damages, including, without limitation, degraded product it had to discard, lost revenue and sales, inability to produce

and sell certain strains of bacteria, infrastructure/facility costs, operational costs, repair/maintenance expenses and the like.

## COUNT I: FRAUDULENT INDUCEMENT (Both Defendants)

27.     ProbioFerm incorporates the foregoing paragraphs by reference as if fully stated herein.

28.     Prior to purchasing the Model 050, Defendants represented to ProbioFerm that:

      a.      The Model 001 was fully scalable to the Model 050, including as to the lower drying temperatures achieved by the Model 001; and

      b.      Other companies had purchased the Model 050 and, as a result, ProbioFerm would not be the "guinea pig" as to the Model 050.

29.     These representations are false.

30.     These representations were material to ProbioFerm's decision to purchase the Model 050 and ProbioFerm would not have purchased the Model 050 but for these representations.

31.     Defendants made the representations with scienter.

32.     Defendants intended to deceive ProbioFerm by making these representations.

33.     ProbioFerm justifiability relied on Defendants' representations.

34.     Defendants' misrepresentations constitute willful and wanton disregard for ProbioFerm's rights, thus entitling ProbioFerm to punitive damages against Defendants pursuant to Iowa Code § 668A.1.

35.     Defendants' misrepresentations were made in bad faith, vexatiously, wantonly, and/or for oppressive reasons, thus entitling ProbioFerm to recover its reasonable attorney fees incurred in relation to this lawsuit from Defendants.

36.     ProbioFerm incurred significant monetary damages as a result of Defendants' misrepresentations.

37.     Defendants' fraudulent misrepresentations that induced ProbioFerm into purchasing the Model 050 render any contract found to exist between them voidable by ProbioFerm and unenforceable by Fluid, including any accompanying terms and conditions.

WHEREFORE Plaintiff, ProbioFerm, LLC, prays for judgment against Defendants, Fluid Air, LLC and Spraying Systems, Inc., in an amount to be determined at trial, including compensatory damages, punitive damages, a finding that any contract between the parties is voidable by ProbioFerm and unenforceable by Fluid, the costs of this action, reasonable attorneys' fees, interest at the highest rate available under the law, and for such other and further relief as this Court deems just and appropriate.

## COUNT II: FRAUDULENT MISREPRESENTATION (Both Defendants)

38.     ProbioFerm incorporates the foregoing paragraphs by reference as if fully stated herein.

39.     Prior to purchasing the Model 050, Defendants represented to ProbioFerm that:

   a.     The Model 001 was fully scalable to the Model 050, including as to the lower drying temperatures achieved by the Model 001; and

   b.     Other companies had purchased the Model 050 and, as a result, ProbioFerm would not be the "guinea pig" as to the Model 050.

40.     These representations are false.

41.     These representations were material to ProbioFerm's decision to purchase the Model 050 and ProbioFerm would not have purchased the Model 050 but for these representations.

42.     Defendants made the representations with scienter.

43.     Defendants intended to deceive ProbioFerm by making these representations.

44.     ProbioFerm justifiability relied on Defendants' representations.

45.     Defendants' misrepresentations constitute willful and wanton disregard for ProbioFerm's rights, thus entitling ProbioFerm to punitive damages against Defendants pursuant to Iowa Code § 668A.1.

46.     Defendants' misrepresentations were made in bad faith, vexatiously, wantonly, and/or for oppressive reasons, thus entitling ProbioFerm to recover its reasonable attorney fees incurred in relation to this lawsuit from Defendants.

47.     ProbioFerm incurred significant monetary damages as a result of Defendants' misrepresentations.

WHEREFORE Plaintiff, ProbioFerm, LLC, prays for judgment against Defendants, Fluid Air, LLC and Spraying Systems, Inc., in an amount to be determined at trial, including compensatory damages, punitive damages, the costs of this action, reasonable attorneys' fees, interest at the highest rate available under the law, and for such other and further relief as this Court deems just and appropriate.

## COUNT III: NEGLIGENT MISREPRESENTATION (Both Defendants)

48.     ProbioFerm incorporates the foregoing paragraphs by reference as if fully stated herein.

49.     Prior to purchasing the Model 050, Defendants represented to ProbioFerm that:

a.     The Model 001 was fully scalable to the Model 050, including as to the lower drying temperatures achieved by the Model 001; and

      b.      Other companies had purchased the Model 050 and, as a result, ProbioFerm would not be the "guinea pig" as to the Model 050.

50.     These representations are false.

51.     Defendants had a financial interest in making these representations for the benefit and guidance of ProbioFerm.

52.     Defendants intended the representations to influence ProbioFerm's decision as to whether or not to purchase the Model 050.

53.     ProbioFerm justifiability relied and acted on Defendants' representations.

54.     ProbioFerm incurred significant monetary damages as a result of Defendants' misrepresentations.

WHEREFORE Plaintiff, ProbioFerm, LLC, prays for judgment against Defendants, Fluid Air, LLC and Spraying Systems, Inc., in an amount to be determined at trial, including compensatory, consequential and punitive damages, the costs of this action, reasonable attorneys' fees, interest at the highest rate available under the law, and for such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims and defenses.

Dated: June 29, 2021                    Respectfully submitted,


                                        */s/ Michael A. Dee*
                                        Michael A. Dee, AT0002043
                                        Brant D. Kahler, AT0009819
                                        BROWN, WINICK, GRAVES, GROSS AND
                                        BASKERVILLE, P.L.C.
                                        666 Grand Avenue, Suite 2000
                                        Des Moines, IA 50309-2510
                                        Telephone:  (515) 242-2400
                                        Facsimile:   (515) 242-2488
                                        E-mail:  michael.dee@brownwinick.com
                                                 brant.kahler@brownwinick.com


                                        ATTORNEYS FOR PLAINTIFF
                                        PROBIOFERM, LLC